UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

CRIMINAL ACTION NO. 13-21-ART-5

UNITED STATES OF AMERICA, PLAINTIFF,

V.   MAGISTRATE JUDGE'S
     REPORT AND RECOMMENDATION

TIFFANY CAUDILL, DEFENDANT.

On March 6, 2014, the Court held an evidentiary hearing in this matter to hear evidence on the Defendant's Motion to Suppress any statements made by her, and in violation of her rights. [R. 287]. For the reasons stated below, the undersigned recommends that her motion to suppress be denied.

FACTUAL BACKGROUND

During the evidentiary hearing in this matter, Detective Virgil Ray testified that on September 7, 2013, a controlled drug transaction was arranged utilizing a confidential informant to purchase heroin from Kenneth Richard Hodges, Jr. While conducting surveillance on the transaction, officers observed Hodges arrive in a vehicle being driven by the Defendant, Tiffany Caudill. He exited Caudill's vehicle and go into the vehicle being driven by the confidential informant. Following the transaction, Hodges got back into Caudill's vehicle, and the two began to drive away. However, law enforcement officers initiated a traffic stop at the Kmart parking lot, in the Coal Run area of Pike County. Detective Ray, Task Force Officer Brian Lee, and a uniformed officer with the KSP got out of Ray's unmarked vehicle. Officer Lee, armed with an M-16, opened the driver's side door before going around the vehicle to the passenger side, where

Hodges was sitting. Detective Ray went to the driver's side door. Recognizing Caudill from previous unrelated investigations, Detective Ray handcuffed her hands in the front of her body rather than behind as she was not perceived to be a threat, and placed her on the ground. She was not placed under arrest, but was patted down to detect any weapons. Detective Ray, in the presence of Officer Russell Blankenship, with the Pikeville Police Department, asked Ms. Caudill if she desired to cooperate. She acted as though she did, so Ray walked her around behind his vehicle, and asked her again if she would like to cooperate. She said "yes" in response, and stated that she could not go back to jail. Detective Ray then advised her of her <u>Miranda</u> rights. When asked what she was doing, Caudill stated that "we just came from up north, and I'm driving him around while he sells drugs", referring to Richard Hodges. Officer Blankenship observed her hands move in a way that indicated she had put something into her mouth, and the officers observed her chewing on something. They recovered a baggie from her mouth with a small amount of residue that appeared to be heroin, and placed it into an evidence bag. Detective Ray then discontinued any further discussions with her.

Caudill was then placed under arrest by Officer Blankenship, who transported her to the Pike County Detention Center. At the jail, Blankenship called for an ambulance to transport her to the Pikeville Medical Center, upon his suspicion that she had ingested an additional amount of an unknown substance. While in the ambulance, Caudill spontaneously stated that she "hates cops, and if he would provide better jobs for her, she would not need to sell drugs like she has to do to survive." At the hospital, a nurse reported to Officer Blankenship that she believed Caudill had ingested an additional quantity of a substance that had been concealed in her bra.. After one to two hours, Caudill was discharged from the hospital and returned to the jail. She made no

further statements.

The parties do not dispute the facts recited above, and the Defendant produced no evidence to contradict the facts offered. However, Caudill contends that any statements she made during the course of events set out above should be suppressed on the grounds that the totality of the circumstances demonstrate that she was not properly advised of her constitutional rights and any statement was not voluntary. [Record No. 293]. On the other hand, the United States argues that Caudill was properly advised of her Miranda rights at the scene of the traffic stop, and that she knowingly, intelligently and voluntarily waived those rights, and made statements to law enforcement. In addition, at the evidentiary hearing, the United States contended that the statements made by Caudill during the ambulance ride to the hospital were spontaneous utterances, made without any questioning or instigation of law enforcement. For these reasons, the government asks that the motion to suppress be denied.

For the reasons stated below, the Court recommends that the motion to suppress be denied.

LEGAL STANDARD

Suppression of evidence is only appropriate when evidence is obtained in violation of a defendant's constitutional rights. See Mapp v. Ohio, 367 U.S. 643 (1961). A person who claims to have been aggrieved of a constitutional violation bears the initial burden of production and persuasion to suppress evidence. United States v. Smith, 783 F.2d 648, 650 (6th Cir. 1986). Once the defendant has made basis for his motion, the government then has the burden of demonstrating that there was not a constitutional violation. *See* United States v. Bradley, 163

Fed. Appx. 353, 357 (6th Cir. 2005) (citing United States v. Matlock, 415 U.S. 164, 177 n. 14 (1974); Colorado v. Connelly, 479 U.S. 157, 168 (1986)).  The controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence. Matlock, 415 U.S. at 177 n. 14.

The government must advise a person of his rights under the Fifth and Fourteenth Amendments before commencing a custodial interrogation.  Miranda v. Arizona, 384 U.S. 436, 444-45 (1966).  Once advised, an individual may way the rights, but the waiver must be knowing, intelligent and voluntary. Miranda, 384 U.S. at 475.  A waiver of the right to remain silent may be express or implied.  See Franklin v. Bradshaw, 545 F.3d 409, 414 (6th Cir. 2008).  However, it must be made voluntarily, intelligently and knowingly. Miranda, 384 U.S. at 444. In addition, the invocation of the right to remain silent must be unambiguous. Thompkins, 130 S. Ct. at 2260 (holding that individual who did not say that "he wanted to remain silent or that he did not want to talk with the police," failed to invoke his right to cut off police questioning).  The waiver inquiry is described as follows:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.  Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.  Only if the "totality of the circumstances surrounding the interrogation: reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.

Moran v. Burbione, 475 U.S. 412, 421 (1986). No formal waiver procedure is required, but the "law can presume that an individual who, with a full understanding of his or her rights, acts in a

4

manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford." Berghuis v. Thompkins, 130 S.Ct. 2250, 2262 (2010). Therefore, where the government shows that a Miranda warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent." Id.

ANALYSIS

The evidence at the hearing is uncontradicted and establishes that prior to offering any statements, Caudill was informed of her right to an attorney and to remain silent. In addition, there is no evidence that she invoked her rights after being so advised. Rather, the issue raised by the Defendant is then whether she knowingly and voluntarily waived her rights.

The totality of the circumstances lead the Court to find that Caudill understood her rights and waived them voluntarily. In the instant case, Caudill was twice asked if she desired to cooperate with Detective Ray. The Detective asked Ms. Caudill if she desired to cooperate upon the initial contact with her. He believed that she acted as though she did, and there is no evidence in the record to contradict this testimony. Detective Ray then walked her around behind his unmarked vehicle, and asked her again if she would like to cooperate. She said "yes" in response, and stated that she "could not go back to jail". Detective Ray then advised her of her Miranda rights. She then explained that "we just came from up north, and I'm driving him around while he sells drugs". There is no evidence that Caudill did not hear, or did not understand Detective Ray. In fact, the evidence indicates that she twice expressed her desire to cooperate with him. After being advised of her rights, the evidence is clear that she then spoke

5

voluntarily, and she offered no evidence at the hearing that the statements made were the result of coercion or intimidation. As a result, the Court must conclude that Caudill was properly advised of her right to counsel and to remain silent, and voluntarily waived those rights before making a statement to law enforcement. The invocation of the right to remain silent must be unambiguous, and the Court is presented with no proof of any conduct that would evidence an attempt to invoke her rights. See Thompkins, 130 S. Ct. at 2260 (holding that individual who did not say that "he wanted to remain silent or that he did not want to talk with the police," failed to invoke his right to cut off police questioning). As a result, Caudill's statements made at the scene were not the product of a violation of her rights, and she is not entitled to have them suppressed.

Similarly, Caudill's statements made while riding in the ambulance with Officer Blankenship to the hospital should not be suppressed. There is no evidence of questioning, coercion, or intimidation. The only evidence before the Court is that Caudill made a spontaneous statement to Officer Blankenship that she "hates cops, and if he would provide better jobs for her, she would not need to sell drugs like she has to do to survive." Statements such as this, uttered "freely and voluntarily" are admissible in evidence, as Miranda makes clear that "[v]olunteered statements of any kind are not barred by the Fifth Amendment." Miranda, 384 U.S. at 478.

Therefore, for the reasons stated herein, the Court recommends that the Defendant's Motion to Suppress [R. 287] be denied. Specific objections to this Report and Recommendation must be filed within fourteen (14) days from the date of service thereof or further appeal is waived. United States v. Campbell, 261 F.3d 628, 632 (6th Cir. 2001); Bituminous Cas. Corp. v.

6

Combs Contracting Inc., 236 F. Supp. 2d 737, 749-750 (E.D. Ky. 2002). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004); Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995).

    Signed March 12, 2014.

Signed By:
*Edward B. Atkins* ℰβ⊬
United States Magistrate Judge